**DEREK SMITH LAW GROUP, PLLC**
Caroline H. Miller, Esq.
Attorney I.D. No. 321420
1628 Pine Street
Philadelphia, PA 19103
Phone: (215) 391-4790
Email: caroline@dereksmithlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

----------------------------------------
HILLARY RHYDDERCH,

    Plaintiff,

v.

NESHAMINY SCHOOL DISTRICT; DAWN
KELLY, individually and in her official capacity;
DEREK ALBARRAN, individually and in his
official capacity; and KELLY KOZIK,
individually and in her official capacity,

    Defendants.
----------------------------------------

Civil Action No. 2:26-cv-01706

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiff Hillary Rhydderch ("Plaintiff" or "Ms. Rhydderch"), by and through her attorneys, Derek Smith Law Group, PLLC, brings this action against Defendants Neshaminy School District (hereinafter referred to individually as "Neshaminy" and/or the "District"), Dawn Kelly, Derek Albarran, and Kelly Kozik (hereinafter referred to collectively as the "Defendants"). upon both information and belief, alleges as follows:

**INTRODUCTION**

1. Ms. Rhydderch is a highly credentialed music educator who served as the Choral Director at Carl Sandburg Middle School for over a decade. After taking maternity leave in December 2023, she was demoted from her Choral Director position, stripped of her choral teaching responsibilities, subjected to a hostile work environment, denied reinstatement to her pre-leave

1

position in violation of the law, and denied reasonable accommodations for lactation upon her return. Defendants replaced her with a younger, less experienced male colleague and have engaged in ongoing retaliation against her for complaining about their discriminatory treatment.

2. Ms. Rhydderch brings this action for monetary damages and all other appropriate relief as deemed appropriate by this Court to remedy unlawful discrimination, hostile work environment, and retaliation in violation of pursuant to 42 U.S.C. §§ 12101 ("Section 1983"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.* ("PWFA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the Fair Labor Standards Act of 1938, as amended by the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act"), 29 U.S.C. § 207(r); 42 U.S.C. § 1983; and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* ("PHRA"), and to redress the Defendants' collective unlawful employment practices in violations of the above Federl and State laws.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the varying Federal, State, and City/Country laws.

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. §§ 12101, 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §§ 1331, and 1343(a)(3).

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

2

6. In accordance with the Federal Rules of Civil Procedure, venue is proper in this district based upon the fact that Defendants' unlawful and immoral actions in violation of Plaintiff's rights occurred within the Eastern District of Pennsylvania. Furthermore, Defendants are and still is believed to be located in this judicial district, including but not limited to owning and operating a business within the district. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

7. As such venue is proper in this Court pursuant to 28 U.S.C. §1391.

**PARTIES**

8. Plaintiff Hillary Rhydderch is an adult female resident of the Commonwealth of Pennsylvania and is expressly authorized to bring this Action pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

9. At all relevant times, Plaintiff was employed by Defendant Neshaminy School District as a certified Vocal/General Music Teacher.

10. At all times material, Defendant Neshaminy was Ms. Rhydderch's joint and/or sole employer. Defendant Neshaminy maintained the ability to modify Plaintiff's employment, including but not limited to changing Plaintiff's hours, work assignments, work schedule, and work location, as well as both entities maintained the ability to hire and/or fire Plaintiff.

11. Defendant Neshaminy is a public school district operating within the Commonwealth of Pennsylvania, with its headquarters located at 2250 Langhorne-Yardley Road, Langhorne, Pennsylvania 19047.

12. Defendant Neshaminy is a governmental body established pursuant to the laws of the Commonwealth of Pennsylvania and is otherwise authorized to do business in the Commonwealth of Pennsylvania.

13. Defendant Neshaminy is a "person" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e and Pennsylvania Statutes.

14. Defendant Neshaminy is an "employer" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e and Pennsylvania Statutes.

15. At all relevant times, Defendant Neshaminy has been continuously doing business in the Commonwealth of Pennsylvania and has continuously held at least fifteen (15) employees for all relevant calendar years.

16. At all relevant times, Defendant Neshaminy School District was Plaintiff's employer within the meaning of Title VII, the PWFA, the FMLA, the PUMP Act, and the PHRA, and employed more than fifty (50) employees.

17. Defendant County's exact number of employees is unknown to Plaintiff, but upon information and belief, there are well more employees than the statutory minimum.

18. Defendant Neshaminy operates Carl Sandburg Middle School ("CSMS"), located at 30 Harmony Road, Levittown, Pennsylvania 19056, and was the location where Plaintiff was assigned.

19. Defendant Dawn Kelly (hereinafter referred to as "Defendant Kelly") is an adult individual who, at all relevant times, was employed by Defendant Neshaminy School District as Principal of Carl Sandburg Middle School. Defendant Kelly has since retired from this position as of December 2024.

4

20. At all times material, Defendant Kelly had supervisory authority over Plaintiff, including operational control over Plaintiff's working conditions insofar as she controlled Plaintiff's teaching schedule and whether Plaintiff was appointed for a co-curricular position. Defendant Kelly is sued in both her individual and official capacities under the PHRA and 42 U.S.C. § 1983. Defendant Kelly is also subject to individual liability as an "employer" under the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), as she acted directly in the interest of the employer in relation to Plaintiff.

21. At all times material, Defendant Kelly is a person as defined by 42 U.S.C. § 1983.

22. Defendant Derek Albarran (hereinafter referred to as "Defendant Albarran") is an adult individual who, at all relevant times, was employed by Defendant Neshaminy School District as Vice Principal, and subsequently as Acting Principal, of Carl Sandburg Middle School.

23. At all times material, Defendant Albarran had supervisory authority over Plaintiff, including authority to create and modify class schedules. Defendant Albarran is sued in both his individual and official capacities under the PHRA and 42 U.S.C. § 1983. Defendant Albarran is also subject to individual liability as an "employer" under the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), as he acted directly in the interest of the employer in relation to Plaintiff.

24. At all times material, Defendant Albarran is a person as defined by 42 U.S.C. § 1983.

25. Defendant Kelly Kozik ("Kozik") is an adult individual who, at all relevant times, was employed by Defendant Neshaminy School District as the Director of Human Resources. Defendant Kozik is sued in both her individual and official capacities under the PHRA and 42 U.S.C. § 1983. Defendant Kozik is also subject to individual liability as an "employer" under the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), as she acted directly in the interest of the employer in relation to Plaintiff.

26. At all times material, Defendant Kozik is a person as defined by 42 U.S.C. § 1983.

## ADMINISTRATIVE EXHAUSTION

27. On or about January 8, 2025, the Plaintiff dual-filed her charge for discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), setting forth Defendants' violations of Title VII and PHRA (Charge No. 530-2025-02541).

28. Plaintiff by and through their attorney requested that their Charge be simultaneously filed with the EEOC, PHRC, and any other State or local agency with whom these Agencies had a work sharing agreement.

29. On or about February 4, 2026, the EEOC issued the Plaintiff a Right to Sue Letter.

30. This action is being commenced within ninety (90) days of Plaintiff receiving the above referenced Notice of Right to Sue.

31. This action is being commenced more than one year after Plaintiff's initial agency filing date. To date no determination has been made by the PHRC relating to the herein complaint

32. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

## MATERIAL FACTS

33. In or around January 2010, Plaintiff was hired by Defendant Neshaminy School District as a certified vocal/general music teacher for grades K-12 at Carl Sandburg Middle School.

34. Plaintiff possesses exceptional educational credentials, including a Master of Science in Music with a Vocal Minor, a Master of Music Education with a Vocal Minor, and a Bachelor's degree in Music Education with a Vocal Minor.

35. Plaintiff has worked in the music education community since 2006, accumulating over sixteen (16) years of experience as a choral director for grades K-12 prior to her demotion.

36. From the beginning of her employment with Defendant Neshaminy School District, Plaintiff maintained satisfactory and exemplary performance reviews.

37. In or around 2014, Plaintiff was appointed as Choral Director at CSMS, in addition to her general music teaching responsibilities.

38. Plaintiff initiated and developed the Select Choir program at CSMS, working diligently to make it a successful part of the District's music program and community.

39. Prior to her maternity leave, Plaintiff's teaching schedule included approximately four (4) graded general music classes in 5th, 6th, and 8th grade, alongside approximately eight (8) choir classes ranging from grades 5-8.

40. Plaintiff has many years of experience teaching choral pedagogy to both children and other professional music educators, making her among the most highly educated vocal music educators in the entire Neshaminy School District.

41. In or around March 2023, Plaintiff became pregnant with her second child.

42. In September 2023, Plaintiff's maternity leave was approved by the Board of School Directors to commence on December 19, 2023, and end on December 19, 2024.

43. Accordingly, Plaintiff began her maternity leave in December 2023.

44. During her maternity leave, Plaintiff was explicitly instructed by her supervisors to refrain from using her school district email account.

45. In December 2023, Eddie Tamanini ("Mr. Tamanini") was hired as a Long-Term Substitute to fill Plaintiff's teaching position and Choral Director role during her leave.

46. Upon information and belief, at the time of his appointment as Long-Term Substitute, Mr. Tamanini had no experience whatsoever in teaching professionally.

47. On or about May 9, 2024, while Plaintiff was on maternity leave, a notice regarding co-curricular positions for the 2024-2025 school year was allegedly sent to staff, including Plaintiff.

48. On May 14, 2024, Plaintiff underwent urgent abdominal surgery to repair an umbilical hernia and perform a more invasive repair of surrounding abdominal muscles that were affected during her December 2023 Cesarean section.

49. At this time, Plaintiff was recovering from surgery while also nursing a five-month-old infant and caring for her toddler.

50. On or about May 9, 2024, Defendant Kelly sent a text message to Plaintiff advising her that co-curricular positions had been posted and reminding her to check email.

51. Plaintiff did not respond by the May 17, 2024, deadline as she was recovering from surgery.

52. Prior to the 2024-2025 school year, there was no established policy or practice within the District or school requiring staff members to reapply for their own co-curricular positions on an annual basis. Accordingly, Plaintiff was never required to reapply for her Choral Director position during her entire tenure in that role since 2014 prior to the 2024-2025 school year.

53. Plaintiff was always fully restored to her Choral Director position following her previous maternity leave (March 2022 to September 2022) and academic sabbatical leave (2020 school year) without having to reapply.

54. On June 4, 2024, while Plaintiff was still on maternity leave, Defendant Kelly contacted Plaintiff via text message and inquired whether Plaintiff would like the position of Assistant Choral Director.

55. Plaintiff was perplexed by this communication, as she had maintained the position of Choral Director since 2014 and had never resigned from the position.

56. When Plaintiff expressed confusion and stated that she was already the Choral Director, Defendant Kelly responded, claiming that "all positions have to be reposted every year."

57. Defendant Kelly further informed Plaintiff that her position as Choral Director had already been given to Mr. Tamanini because Plaintiff did not respond to the email sent in early May.

58. At the time of the decision, Mr. Tamanini had only four (4) months of formal teaching experience.

59. Defendant Kelly further stated that she "assumed that the time commitment for the Choral Program would be 'a lot more than you [Plaintiff] can probably commit to."

60. This discriminatory statement by Defendant Kelly was based on gender stereotypes regarding Plaintiff's ability to balance work and family responsibilities as a new mother.

61. At no time during her employment did Plaintiff ever express feeling overwhelmed by the time commitment required by the Choral Program.

62. Conversely, On June 7, 2024, Plaintiff requested to shorten her leave of absence and return at the beginning of the 2024-2025 school year, rather than mid-year as originally planned.

63. Plaintiff would not have made this request if she was overwhelmed by workload associated with the Choral Director Position.

64. On June 18, 2024, the Board of School Directors approved the appointment of Mr. Tamanini as Choral Director and Plaintiff as Assistant Choral Director.

65. Mr. Tamanini, who is male and had approximately four (4) months of teaching experience at the time of his appointment, was selected to replace Plaintiff despite her nearly twelve (12) years of experience as Choral Director at CSMS and eighteen (18) years of experience as a choral director overall.

66. Plaintiff inquired whether anything could be done to restore her to her previous position, as the change would result in a demotion and reduction in responsibilities and stipends.

67. Defendant Kelly informed Plaintiff that nothing could be done and that the only position remaining for her was that of Assistant Director to Mr. Tamanini.

68. Defendant Kelly's refusal to restore Plaintiff to her position was discriminatory and based upon impermissible gender and pregnancy-based stereotypes.

69. On or about July 26, 2024, Plaintiff asked her union representative to investigate whether her situation could be grieved.

70. Plaintiff began emailing her supervisors, Defendants Kelly and Albarran, as well as Defendant Kozik in Human Resources, to document the position change and seek an explanation.

71. On August 15, 2024, the Neshaminy Federation of Teachers filed a grievance on Plaintiff's behalf regarding her demotion from Choral Director.

72. The grievance proceeded to a second level hearing on August 21, 2024, which was heard by the assistant superintendent.

73. The union was informed that the grievance would likely be denied based on a 30-day filing technicality, and the union board voted not to take the matter to arbitration.

74. The District offered Plaintiff monetary compensation representing the difference between the Choral Director and Assistant Choral Director stipend but refused to restore her Director title.

75. The union accepted this settlement on Plaintiff's behalf, although Plaintiff did not want to accept it. The settlement agreement did not contain language preventing Plaintiff from pursuing further legal action.

76. On August 20, 2024, the Board of School Directors approved Plaintiff's request to return early from maternity leave.

77. Plaintiff returned to work at the beginning of the 2024-2025 school year on August 26, 2024.

78. Upon her return, Plaintiff was subjected to a significantly increased and punitive workload compared to her pre-leave schedule.

79. Prior to her maternity leave, Plaintiff taught four (4) graded general music classes and approximately eight (8) choir classes.

80. Upon her return, Plaintiff was scheduled to teach seven (7) graded general music classes and zero (0) choir classes.

81. By comparison, Mr. Tamanini was assigned only three (3) general music classes and eleven (11) choir classes.

82. Plaintiff was stripped of all classes in vocal music instruction and forced to teach nearly double her normal general music classroom instruction.

83. Plaintiff is the only secondary music educator and choral assistant director in the District who is not permitted to teach any choir classes whatsoever.

84. Plaintiff's workload is inequitable compared to her colleagues, including the Choral Directors at the District's other middle schools, who teach choir classes during the day and, in some cases, have split director positions.

85. Plaintiff informed Defendants that her changed schedule felt punitive and that her workload had been doubled after returning from maternity leave.

86. On September 9, 2024, Plaintiff emailed Defendants Albarran, Kelly, and Kozik regarding the inequity in her schedule and her position change.

87. Defendant Kozik refused to respond to Plaintiff's questions, claiming she could not respond during an ongoing grievance process.

88. Defendant Albarran's explanations failed to adequately explain why Plaintiff's workload had nearly doubled compared to her similarly situated colleagues.

89. Defendant Albarran claimed that the master schedule changed every year depending upon "found efficiencies and/or the needs of students."

90. Plaintiff questioned this explanation, stating that she had been fully restored to her position upon return from previous any and all previous leave of absences. Plaintiff further explained that the inequity in scheduling was not reconcilable with Defendant Albarran's explanation.

91. Upon Plaintiff's return to work in August 2024, she was still nursing after giving birth to her second child.

92. Plaintiff requested private space and appropriate work breaks to express breast milk. Plaintiff directed this request to Defendants Kelly and Albarran.

93. Plaintiff was forced to repeatedly make requests for private space before she was finally provided with any accommodation.

94. Further, Plaintiff was instructed to fit pumping breastmilk "into your [Plaintiff's] schedule like last time."

95. On August 30, 2024, Plaintiff sent an email to Defendant Kelly attaching FLSA regulations concerning protection to pump at work.

96. Immediately thereafter, Defendant Kelly appeared in Plaintiff's classroom and stated, "I know the law."

97. Plaintiff was eventually provided a small storage closet near the auditorium to pump breast milk.

98. The closet provided to Plaintiff contained mouse droppings, lacked a sink, and was generally unsanitary.

99. Plaintiff complained about the unsuitable and inhospitable conditions of the space provided and placed a work order to have it disinfected thoroughly.

100. Upon information and belief, the closet was only cleaned once after Plaintiff's complaints in August 2024 and again in October 2024 after Plaintiff submitted a maintenance request.

101. The extreme stress from Plaintiff's punitive schedule and daily humiliation of her demotion, combined with inadequate and unsanitary lactation facilities, made it impossible for Plaintiff to express milk on some days.

102. Since filing her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff has been subjected to ongoing discriminatory and harassing disciplinary practices by Defendants Kelly and Albarran.

103. Plaintiff has been criticized and scrutinized on multiple occasions by Defendants Kelly and Albarran after correcting or disciplining students during class and while on field trips.

104. Defendant Albarran continuously questioned Plaintiff's classroom management practices when Plaintiff requested administrative follow-through on office discipline referrals.

105. By contrast, Plaintiff's similarly situated male coworkers were not subject to such criticism and have been permitted to yell in students' faces or use inappropriate language without consequence.

106. Plaintiff has been disciplined for alleged dress code violations by Defendant Kelly while similarly situated coworkers are permitted to dress freely without fear of reprimand.

107. Upon her return from her first maternity leave, Plaintiff was given an unsatisfactory (Needs Improvement) performance rating by Defendant Albarran, who claimed she had been "told verbally" to submit certain documentation before her leave.

108.    Plaintiff possessed documentation proving she had completed the work that was required and provided the same to Defendants.

109.    Plaintiff further informed Defendant Kelly that Defendant Albarran's standard practice was to email all directives, which he had not done.

110.    Upon Plaintiff's presentation of this evidence, Defendant Albarran was instructed to change Plaintiff's rating to "Proficient."

111.    On October 31, 2024, Defendant Albarran sent Plaintiff a written communication essentially reprimanding her regarding an absence, claiming she had no lesson plans, her CANVAS was not up to date, and her computer should be at home.

112.    Plaintiff refuted all of Defendant Albarran's claims, providing evidence of emergency lesson plans behind her desk and explaining she had been waiting for Defendant Albarran's response to her CANVAS questions.

113.    In November 2024, Plaintiff again responded to Defendant Albarran, refuting his explanations and documenting the discrepancies in schedules across the District

114.    Plaintiff also detailed the emotional and physical toll the inequitable and hostile situation was taking on her.

115.    When Plaintiff's union representative met with Defendant Kelly about the reasons for Plaintiff's position change, Defendant Kelly made new allegations, including "we had some parent complaints, kids were quitting, she's becoming a problem, it's what's best for the program."

116.    Plaintiff was never made aware of these allegations as Defendants never brought them to her attention.

14

117. Defendants' failure to inform Plaintiff about the alleged parent complaints and other issues constituted a direct violation of Defendant Neshaminy's own policies and procedures.

118. When asked by Union Vice President Marylou Sienko if she had ever spoken to Plaintiff about these alleged complaints, Defendant Kelly admitted she had not.

119. On or about March 5-7, 2025, Plaintiff was notified that she allegedly received a parent complaint regarding an incident in the classroom.

120. Defendant Albarran held a meeting with Plaintiff that he claimed would be to simply obtain her version of the events that led to the complaint.

121. However, Defendant Albarran instead interrogated Plaintiff in a hostile and aggressive manner.

122. The interrogation was so hostile that Plaintiff's union representative, Anthony Vizzini, had to intervene and shut down the questioning.

123. Upon information and belief, Plaintiff's similarly situated male colleagues were never subjected to remotely similar treatment in response to parental complaints.

124. On March 10, 2025, Plaintiff attempted to make a formal complaint regarding Defendant Albarran's retaliatory conduct in the meeting. Plaintiff directed her attempt to Defendant Kozik.

125. On March 10, 2025, Defendant Kozik stated she would respond after investigating.

126. On March 14, 2025, Plaintiff followed up to request the formal steps for filing a complaint, having received no response.

127. On March 19, 2025, Plaintiff's union president, Tara Huber followed up again to request the formal complaint process.

128.   On March 19, 2025, Defendant Kozik responded that because the matter was being handled by the EEOC, it may be inappropriate for her to deal with Plaintiff directly.

129.   On March 19, 2025, just two hours later and without having spoken to Plaintiff or any other adult witness in Plaintiff's room at the time of the incident; Defendant Albarran, Defendant Kozik claimed the investigation was concluded.

130.   Defendant Kozik never sent Plaintiff the formal complaint paperwork and did not contact Plaintiff's Instructional Assistant, Colette Filoon about the original parent accusation.

131.   On March 24, 2025, Plaintiff submitted the actual formal complaint paperwork, which Defendant Kozik acknowledged receiving.

132.   On April 7, 2025, Plaintiff followed up with Defendant Kozik to check on the status of the complaint, noting it had been a month since Plaintiff's first attempt, and no one had contacted her.

133.   On or around April 24, 2025, Defendant Kozik and another member of upper administration, Sean Haines, held a meeting with Plaintiff regarding Defendant's Albarran's behavior.

134.   Defendant Kozik began the meeting by explaining what actions had been taken thus far in response to Plaintiff's formal complaint.

135.   Defendant Kozik claimed that she interviewed Anthony Vizzini and that Mr. Haines interviewed Defendant Albarran regarding the incident.

136.   Plaintiff then requested an update on the investigation into Defendant Albarran's behavior.

137.   Defendant Kozik claimed that she could not give Plaintiff specific details about the investigation. However, despite failing to provide any substantive details about investigation,

Defendant Kelly was adamant that Defendant Albarran's conduct was not retaliatory because Plaintiff did not experience any adverse employment actions.

138. Defendant Kozik continued to explain, stating that Plaintiff's complaint amounted to her "opinion" of the treatment she endured and that Defendant Albarran was a "new principal."

139. Plaintiff responded by pointing out that while Defendant Albarran had recently been given the "Principal" title, he had been in tasked with enforcing discipline at CSMS for the preceding decade.

140. Plaintiff further explained that prior to her filing of her Charge of Discrimination, she had meetings with Defendant Albarran regarding parental complaints during which she was never spoken to in such an unprofessional, inappropriate, and hostile manner.

141. Defendant Kozik claimed that Defendant Albarran had been counseled on how he should handle investigations of parental complaints.

142. Plaintiff attempted to explain that the issue was not with the investigation of the complaint itself but the hostile manner by which Defendant Albarran conducted the alleged investigation.

143. Defendant Kozik cut Plaintiff off mid-sentence claiming that Plaintiff's explanation was irrelevant to the current meeting.

144. Plaintiff responded by explaining that the reason for her complaint was wholly relevant to a meeting about that very same complaint.

145. Plaintiff further explained she filed the complaint against Defendant Albarran because he attempted to trivialize the incident and further claimed that "he would decide what was needed" to make a determination on the parental complaint despite his failure to conduct a meaningful investigation.

146. Defendant Kozik quickly transitioned, asking Plaintiff about her "endgame" in filing her Charge of Discrimination and formal complaint against Defendant Albarran.

147. Specifically, Defendant Kozik asked Plaintiff, "If you could wave a magic wand and have a resolution, what would that be?"

148. Defendants, including Defendant Kozik, trivialized Plaintiff's complaint and attempted to frame Plaintiff as unreasonable. Defendants went so far as accusing Plaintiff of believing that she was "beyond reproach."

149. Defendants failed to conduct a meaningful investigation of Plaintiff's complaint regarding Defendant Albarran's unprofessional, inappropriate, and discriminatory hostile treatment.

150. Accordingly, Defendants failed to discipline Defendant Albarran for his conduct in any meaningful fashion.

151. Specifically, Defendants failed to interview individuals who were present for the incident that led to the parental complaint. Plaintiff's Instructional Assistant, Colette Filoon was neither interviewed nor spoken to regarding the incident despite her presence during the alleged incident.

152. With regard to Plaintiff's Choral Director position, Defendants required Plaintiff to re-interview for the position in or around June 2025, during a classroom period, limiting her time to present her qualifications.

153. Despite Plaintiff's vastly superior qualifications and experience, Defendants gave the Choral Director position back to Mr. Tamanini.

154. Plaintiff emailed Jason Bowman and Paul Meehan with follow-up questions about her position and schedule but received no response.

155. On July 17, 2025, Plaintiff sent another follow-up email regarding her status as assistant choral director, asking whether her schedule would be more equitable to Mr. Tamanini's schedule and whether she would be permitted to teach any choral classes during the day as her colleagues at other middle schools. Again, Plaintiff received no response.

156. On August 11, 2025, Plaintiff emailed again to ask about her position and schedule but received no response from administration.

157. To date, Plaintiff has still received no response to her questions regarding the inequitable schedule and the reasoning for Plaintiff being actively prevented from providing musical instruction.

158. Plaintiff's schedule for the 2025-2026 school year remains inequitable, with no change allowing her to teach music, conduct, or perform the duties for which she is highly qualified.

159. On December 23, 2025, Plaintiff again emailed to inquire about her position and schedule but received no response.

160. At concerts during the 2024-2025 school year, Defendant Albarran announced only Mr. Tamanini's name, failing to acknowledge Plaintiff's contributions and thereby relegating her contributions to anonymity.

161. The above examples constitute ongoing discrimination, harassment, and retaliation to which Defendants have subjected Plaintiff on a continuous and ongoing basis throughout Plaintiff's employment.

162. Defendants' purported justification for demoting Plaintiff insofar as they claim that she failed to respond to an email about reapplying for her position is pretext for discrimination.

163. No policy requiring annual reapplication for co-curricular positions existed prior to Plaintiff's maternity leave.

164. Accordingly, Plaintiff was never required to reapply for her position following her prior leaves.

165. Defendant Kelly's comment that the time commitment for the Choral Program would be "a lot more than you can probably commit to" reflects discriminatory stereotypes about working mothers.

166. The decision to replace Plaintiff, a highly experienced female educator with multiple advanced degrees, with Mr. Tamanini, a younger, less experienced male, demonstrates discriminatory animus.

167. Defendants' ongoing pattern of heightened scrutiny, unwarranted criticism, punitive scheduling, and failure to respond to Plaintiff's legitimate concerns constitutes retaliation for her protected activity.

168. Defendants acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

169. Defendants' conduct has been malicious, willful, extreme, and outrageous, and was undertaken with full knowledge of the applicable laws.

170. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

171. That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

172.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants jointly and severally.

173.    Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

174.    Plaintiff claims that Defendants unlawfully discriminated against Plaintiff because of her sex/pregnancy.

175.    Plaintiff further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff's position as a result of the unlawful discrimination.

176.    The Defendants have exhibited a pattern and practice of discrimination.

177.    Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Respondent owed and breached its duty to Plaintiff to prevent harassment, discrimination, and retaliation and is liable therefore for negligence.

178.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

### COUNT I
### Title VII, 42 U.S.C. § 2000e-2(a)
### Gender/Sex Discrimination – Disparate Treatment
### (Against Defendant Neshaminy School District)

179.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

180.    Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's sex. *42 U.S.C. § 2000e-2(a)*.

21

181. Discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes sex discrimination under Title VII.

182. Plaintiff is female and was pregnant at all relevant times.

183. Plaintiff was qualified for her position as Choral Director based on her education, credentials, and nearly twelve years of experience in the role.

184. Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

   a. Demotion from Choral Director to Assistant Choral Director;

   b. Significant reduction in job responsibilities;

   c. Punitive increase in workload upon return from maternity leave;

   d. Removal from all choral instruction; and (e)

   e. Disparate treatment compared to male colleagues.

185. Defendants replaced Plaintiff with a younger, less experienced male colleague, Mr. Tamanini.

186. The circumstances surrounding Plaintiff's demotion and subsequent treatment give rise to an inference of discrimination based on sex and pregnancy.

187. Defendants' proffered reasons for their actions are pretextual, as evidenced by the lack of any prior policy requiring reapplication for positions, Plaintiff's instruction not to use work email during leave, and Defendant Kelly's discriminatory comments about Plaintiff's ability to commit to the role as a new mother.

188. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

**COUNT II**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Gender/Sex Discrimination – Hostile Work Environment**
**(Against Defendant Neshaminy School District)**

189.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

190.    Plaintiff is a member of a protected class based on her sex and pregnancy status.

191.    Plaintiff has been subjected to unwelcome harassment based on her sex and pregnancy, including but not limited to:

      f.    Discriminatory comments about her ability to commit to her job as a new mother;

      g.    Demotion and stripping of job responsibilities;

      h.    Punitive scheduling;

      i.    Heightened scrutiny not applied to her similarly situated male colleagues;

      j.    Inadequate lactation accommodations including a dirty closet with mouse droppings;

      k.    Hostile interrogation regarding a parent complaint;

      l.    Failure to respond to legitimate inquiries; and

      m.    Permitting a less experienced male subordinate to dictate her job responsibilities.

192.    The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

193.    Defendant Neshaminy School District is liable for the hostile work environment because the harassment was committed by Plaintiff's supervisors and resulted in tangible employment actions against Plaintiff.

194.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, emotional distress, mental anguish, humiliation, loss of dignity, and interference with her ability to perform her job.

23

**COUNT III**
**Title VII, 42 U.S.C. § 2000e-3(a)**
**(Against Defendant Neshaminy School District)**

195.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

196.    Title VII prohibits retaliation against an employee because the employee has opposed any practice made unlawful by Title VII or has participated in any proceeding under Title VII. 42 U.S.C. § 2000e-3(a).

197.    Plaintiff engaged in protected activity by complaining to Defendants Kelly, Albarran, and Kozik about her discriminatory treatment, filing a union grievance, and filing an EEOC Charge of Discrimination.

198.    Following her protected activity, Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

    n.    Maintaining her demotion despite her complaints;

    o.    Subjecting her to increased scrutiny and criticism;

    p.    Refusing to respond to her legitimate inquiries about her schedule and position;

    q.    Subjecting her to a hostile interrogation regarding a parent complaint;

    r.    Failing to properly investigate her complaints;

    s.    Continuing to deny her choral teaching responsibilities;

    t.    Permitting her subordinate to dictate her job responsibilities.

199.    There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the timing of Defendants' actions and their stated reluctance to communicate with Plaintiff due to the EEOC proceedings.

200. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

## COUNT IV
## Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. 2000gg
## (Against All Defendants)

201. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

202. The Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg et seq., requires covered employers to provide reasonable accommodations to qualified employees for known limitations related to pregnancy, childbirth, or related medical conditions, unless the accommodation would cause an undue hardship.

203. Defendant Neshaminy School District is a covered employer under the PWFA.

204. Plaintiff had known limitations related to pregnancy and childbirth, including but not limited to the need to express breast milk during work hours.

205. Plaintiff requested reasonable accommodations from Defendants, including private space and appropriate work breaks to express breast milk.

206. Defendants failed to provide Plaintiff with reasonable accommodations in a timely manner, requiring Plaintiff to make multiple requests before providing any accommodation.

207. The accommodation ultimately provided was a storage closet containing mouse droppings and lacking a sink. The accommodation was inadequate and unsanitary.

208. Defendants failed to engage in a good faith interactive process with Plaintiff to identify reasonable accommodations.

209. Providing reasonable accommodations for Plaintiff's lactation needs would not have caused undue hardship to Defendant Neshaminy School District.

210. As a direct and proximate result of Defendants' failure to provide reasonable accommodations, Plaintiff has suffered damages including, but not limited to, physical discomfort, emotional distress, interference with her ability to nurse her child, and humiliation.

**COUNT V**
**PHRA, as amended, 43 P.S. § 955 (a)**
**Sex and Pregnancy Discrimination – Disparate Treatment**
**(Against All Defendants)**

211. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

212. The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 et seq., prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex.

213. Discrimination on the basis of pregnancy constitutes sex discrimination under the PHRA.

214. The PHRA imposes individual liability on any person who aids, abets, incites, compels, or coerces, or directly or indirectly commits unlawful discrimination. 43 Pa. Stat. Ann. § 955(e).

215. Defendants Kelly, Albarran, and Kozik, as supervisors and Human Resources personnel, participated in, aided, abetted, and/or directly committed the discriminatory acts against Plaintiff.

216. Defendant Kelly demoted Plaintiff from Choral Director, made discriminatory comments about Plaintiff's ability to commit to her job as a new mother, and refused to restore Plaintiff to her position.

217. Defendant Albarran created and maintained Plaintiff's punitive schedule, subjected her to heightened scrutiny, conducted a hostile interrogation, and refused to meaningfully respond to her inquiries.

218.    Defendant Albarran created and maintained Plaintiff's punitive schedule, subjected her to heightened scrutiny, conducted a hostile interrogation, and refused to meaningfully respond to her inquiries.

219.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

## COUNT VI
## PHRA, as amended, 43 P.S. § 955 (a)
### Pregnancy Discrimination – Hostile Work Environment
### (Against All Defendants)

220.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

221.    Similarly, the PHRA also prohibits hostile work environment harassment, which is harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee (e.g., pregnancy) that is severe or pervasive enough to make a reasonable person with that protected characteristic (e.g., a reasonable person of the involved sex/gender) believe the conditions of the workplace are altered and the working environment is hostile or abusive. Hoy v. Angelone, 691 A.2d 476, (Pa. Super. 1997).

222.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

223.    Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

224.   Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

225.   Plaintiff was subjected to unwelcome harassment based on her sex and pregnancy status that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

226.   Defendants Kelly, Albarran, and Kozik participated in, aided, abetted, and/or directly committed the harassing conduct against Plaintiff.

227.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, emotional distress, mental anguish, humiliation, loss of dignity, and interference with her ability to perform her job.

228.   As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

229.   Defendants actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

230.   Plaintiff further requests that their attorney's fees and costs be awarded as permitted by law.

231.    The conduct of the Defendants deprived Plaintiff of her statutory rights guaranteed under PHRA.

232.    Plaintiff has been damaged by the illegal conduct of Defendants.

**COUNT VII**
**PHRA, as amended, 43 P.S. § 955 (d)**
**Retaliation**
**(Against All Defendants)**

233.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

234.    The PHRA prohibits retaliation, making it an unlawful discriminatory practice:

> (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding, or hearing under this act.

*43 Pa. Stat. Ann. § 955(d).*

235.    Plaintiff engaged protected activity under the PHRA including, but not limited to making formal and informal complaints concerning the discrimination she experienced based on her sex and gender.

236.    Plaintiff's protected activity and/or opposition to Defendants' unlawful employment practices was the motivating and/or determinative factor in Defendants' decision to take adverse employment action against Plaintiff.

237.    The temporal proximity between Plaintiff's protected activity and Defendants' decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

238.    Defendants' adverse actions against Plaintiff occurred in retaliation for Plaintiff's prior protected activity and/or opposition to Defendants' unlawful employment practices,

29

239. These adverse actions were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights.

240. Defendants' retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of the PHRA.

241. As a direct and proximate result of Defendants' retaliatory termination of Plaintiff's employment in violation of PHRA, Plaintiff has suffered and continues to suffer emotional and financial harm.

**COUNT VIII**
**PHRA, as amended, 43 P.S. § 955 (e)**
**Aiding and Abetting**
**(Against All Defendants)**

242. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

243. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

244. Pursuant to the provisions contained within the PHRA, both employers and individual employees can be held liable for retaliation under Pennsylvania Law. 43 Pa. Cons. Stat. § 955 (e). See also, Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

245. Defendants collectively engaged in unlawful discriminatory practices in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

246. As a direct and proximate result of the Defendants' collective retaliatory conduct in violation of the PHRA, Plaintiff has suffered and will continue to suffer financial and economic

30

damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

247. The Defendants' collective actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

248. Plaintiff demands punitive damages as against Defendants, jointly and severally.

249. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

250. The conduct of the Defendants deprived Plaintiff of her statutory rights guaranteed under the PHRA.

251. Plaintiff has been damaged by the illegal conduct of Defendants.

**COUNT IX**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)**
**<u>Interference with FMLA Rights</u>**
**<u>(Against All Defendants)</u>**

252. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

253. The FMLA entitles eligible employees of covered employers to take up to twelve (12) weeks of unpaid leave per year for, among other things, the birth of a child. 29 U.S.C. § 2612(a)(1).

254. The FMLA further guarantees eligible employees the right upon return from qualifying leave to be restored to the same position held before the leave, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

255. At all relevant times, Defendant Neshaminy School District was a covered employer within the meaning of the FMLA, employing fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

256. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA, having been employed by Defendant Neshaminy for at least twelve (12) months and having worked at least 1,250 hours during the twelve-month period preceding her leave. 29 U.S.C. § 2611(2).

257. Plaintiff's maternity leave, commencing December 2023 and extending through the 2023-2024 school year, was FMLA-qualifying leave due to the birth of her second child.

258. Defendants Kelly, Albarran, and Kozik are individually subject to FMLA liability as they each acted, directly or indirectly, in the interest of Defendant Neshaminy School District in relation to Plaintiff. 29 U.S.C. § 2611(4)(A)(ii)(I).

259. Defendants interfered with, restrained, and denied Plaintiff's FMLA rights in the following respects:

    a. Failing and refusing to restore Plaintiff to her same or equivalent position — Choral Director — upon her return from FMLA-qualifying leave;

    b. Demoting Plaintiff to a subordinate position, Assistant Choral Director, under a less experienced male colleague who had been hired as a temporary substitute during Plaintiff's leave;

    c. Assigning Plaintiff a materially different and punitive teaching schedule upon return from leave — seven (7) graded general music classes and zero (0) choir classes —

compared to her pre-leave schedule of four (4) general music classes and eight (8) choir classes;

d.  Using Plaintiff's failure to respond to an email during her protected leave — after having been instructed not to monitor her work email — as justification for denying her restoration to her position; and

e.  Maintaining the punitive, inequitable schedule and refusing to restore Plaintiff's choral responsibilities through the 2025-2026 school year and continuing.

260.  Plaintiff's failure to respond to the May 2024 co-curricular posting email was a direct consequence of her exercise of FMLA-protected leave and her compliance with her supervisors' instruction not to use work email during that period. Defendants may not use Plaintiff's exercise of FMLA rights as a basis for denying restoration.

261.  The co-curricular Choral Director position and the manner in which Plaintiff's teaching schedule was assigned upon return constitute terms and conditions of Plaintiff's overall employment. The materially worse schedule upon return was not equivalent to Plaintiff's pre-leave position and conditions.

262.  Defendants' proffered justification — that Plaintiff failed to respond to an annual reapplication email — is pretextual. No such policy existed during Plaintiff's prior returns from leave. Plaintiff was fully restored to her position after her 2022 maternity leave and her 2020 sabbatical without reapplication.

263.  As a direct and proximate result of Defendants' interference with Plaintiff's FMLA rights, Plaintiff has suffered damages including, but not limited to, lost wages, lost stipends, lost benefits, loss of professional responsibilities and standing, emotional distress, and mental anguish.

**COUNT X**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2)**
**Retaliation for Exercise of FMLA Rights**
**(Against All Defendants)**

264. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

265. The FMLA prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the FMLA, or for exercising or attempting to exercise rights provided under the FMLA. 29 U.S.C. § 2615(a)(2).

266. Plaintiff engaged in protected activity under the FMLA by taking approved maternity leave beginning December 2023, invoking her right to restoration upon return, and objecting to Defendants' failure to restore her to her pre-leave position and working conditions.

267. Following Plaintiff's exercise of FMLA-protected leave and her objections to Defendants' failure to comply with FMLA restoration requirements, Defendants subjected Plaintiff to adverse employment actions causally connected to her protected activity, including but not limited to:

   a. Demoting Plaintiff from Choral Director to Assistant Choral Director;

   b. Imposing a punitive and inequitable teaching schedule that stripped Plaintiff of all choral teaching responsibilities;

   c. Subjecting Plaintiff to heightened disciplinary scrutiny not applied to similarly situated male colleagues;

   d. Conducting a hostile interrogation in connection with a parent complaint following Plaintiff's FMLA-related complaints;

   e. Refusing to respond meaningfully to Plaintiff's inquiries about her schedule and position; and

f.  Denying Plaintiff the Choral Director position again in June 2025 following a re-interview process conducted under inequitable conditions.

268.  The causal connection between Plaintiff's exercise of FMLA rights and the adverse actions is demonstrated by, inter alia: the immediate temporal proximity between Plaintiff's return from FMLA leave and the adverse schedule imposed; Defendants' express reliance on Plaintiff's leave-period inactivity to justify her demotion; the pattern of escalating retaliation following each instance of Plaintiff's protected activity; and Defendant Kozik's statement that she could not communicate with Plaintiff directly because the matter was being handled by the EEOC.

269.  Defendants' conduct was willful within the meaning of the FMLA, 29 U.S.C. § 2617(c)(2), in that Defendants knew or showed reckless disregard for whether their conduct was prohibited by the FMLA, entitling Plaintiff to the three-year statute of limitations and liquidated damages.

270.  As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost stipends, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

**COUNT XI**
**Fair Labor Standards Act, 29 U.S.C. § 207(r)**
**Violation of the PUMP for Nursing Mothers Act**
**(Against Defendant Neshaminy School District)**

271.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

272.  The PUMP for Nursing Mothers Act, effective April 28, 2023, amended the Fair Labor Standards Act to require employers to provide: (1) reasonable break time for a nursing employee to express breast milk for the employee's nursing child each time such employee

has need to express milk for up to one (1) year after the child's birth; and (2) a place, other than a bathroom, that is shielded from view, free from intrusion from coworkers and the public, and functional for the purpose of expressing breast milk. 29 U.S.C. § 207(r).

273. Defendant Neshaminy School District is a covered employer under the FLSA and PUMP Act.

274. Plaintiff returned to work in August 2024 and was nursing her infant child who was less than one (1) year of age at the time.

275. Plaintiff was entitled to reasonable break time and a functional private space to express breast milk as required by the PUMP Act.

276. Defendants violated the PUMP Act in the following respects:

   a. Initially refusing to provide any dedicated space or break time, and instead instructing Plaintiff to "work it into" her schedule, with no provision for coverage or a designated private space;

   b. Failing to respond promptly and adequately to Plaintiff's requests for accommodation, requiring Plaintiff to repeatedly advocate for her legally protected rights and ultimately provide Defendants with a copy of the applicable FLSA regulations before action was taken;

   c. Providing Plaintiff with a storage closet containing mouse droppings and lacking a sink as the designated lactation space, which was not functional for the purpose of expressing breast milk; and

   d. Failing to ensure the space was maintained in a sanitary condition, cleaning it only twice during the entire period of Plaintiff's need — once in late August 2024 and once in October 2024 — despite Plaintiff's complaints.

277. The PUMP Act expressly states that a bathroom does not qualify as a compliant lactation space. The closet provided to Plaintiff, which was unsanitary and lacked a sink, similarly fails to meet the statutory standard of being "functional" for expressing breast milk.

278. The extreme stress from the inadequate lactation conditions, combined with Plaintiff's punitive schedule, made it impossible for Plaintiff to express milk on certain days, resulting in physical discomfort and interference with Plaintiff's ability to continue nursing.

279. As a direct and proximate result of Defendants' violations of the PUMP Act, Plaintiff has suffered damages including, but not limited to, lost wages for unlawfully withheld break time, physical discomfort, emotional distress, and interference with her ability to nurse her child. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to unpaid wages, an equal amount as liquidated damages, and attorneys' fees and costs.

**COUNT XII**
**42 U.S.C. § 1983**
**Fourteenth Amendment Equal Protection Clause**
**(Against Defendants Kelly, Albarran, and Kozik in Their Individual Capacities)**

280. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

281. This count sets forth a claim to redress violations of Section 1 of the Fourteenth Amendment to the United States Constitution (the "Equal Protection Clause") through 42 U.S.C. § 1983.

282. The Equal Protection Clause prohibits states from depriving persons of "equal protections of the laws," including discrimination and harassment claims by public employees.

283. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights secured by the Constitution or laws of the United States.

284. Under the Equal Protection Clause, public employees have a constitutional right to be free from unlawful discrimination based on sex/gender in public employment.

285. Section 1983 provides that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

286. The contours of Plaintiff's rights are clearly established, and sufficiently clear, such that any reasonable state officer would know that subjecting an employee to discrimination based on race would violate the employee's rights under the Equal Protection Clause.

287. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors from discriminating against persons on the basis of sex.

288. At all relevant times, Defendants Kelly, Albarran, and Kozik were state actors acting under color of state law in their capacities as employees of Neshaminy School District, a public school district established under Pennsylvania law.

289. Defendants Kelly, Albarran, and Kozik individually and collectively subjected Plaintiff to intentional discrimination on the basis of her sex, in violation of the Equal Protection Clause of the Fourteenth Amendment, through the following acts:

   a. Defendant Kelly demoted Plaintiff from her Choral Director position and replaced her with a less qualified male substitute while making explicit statements reflecting sex stereotypes about women's ability to commit to professional responsibilities as mothers;

   b. Defendant Kelly refused to restore Plaintiff to her position upon return from maternity leave and declined to consider equitable solutions that would have split responsibilities;

c. Defendant Albarran created and maintained a punitive teaching schedule for Plaintiff that stripped her of choral responsibilities while assigning those responsibilities to the male replacement, and subjected Plaintiff to heightened scrutiny and a hostile interrogation not applied to similarly situated male colleagues; and

d. Defendant Kozik failed to investigate Plaintiff's formal complaints of sex discrimination, trivialized those complaints, and obstructed Plaintiff's access to the formal complaint process.

290. Plaintiff similarly situated male colleagues were not subjected to demotions, punitive scheduling, hostile interrogations, or similar adverse treatment.

291. Defendants' actions were intentional and motivated by discriminatory animus based on Plaintiff's sex and her status as a pregnant woman and nursing mother.

292. Plaintiff's Title VII claim runs against Defendant Neshaminy School District as the employer. This § 1983 equal protection claim is directed solely against the individual Defendants in their personal capacities, for whom individual liability under Title VII is unavailable. These claims are therefore not duplicative.

293. Because the actions of Defendants Kelly, Albarran, and Kozik were malicious, wanton, or recklessly indifferent to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages against each individual Defendant under 42 U.S.C. § 1983.

294. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

## COUNT XI
## 42 U.S.C. § 1983
### Retaliation for Exercise of First Amendment / Constitutionally Protected Activity
### (Against Defendants Kelly, Albarran, and Kozik in Their Individual Capacities)

295.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

296.    Under the First Amendment to the United States Constitution, made applicable to state actors through the Fourteenth Amendment, public employees retain the right to speak out on matters of public concern without suffering retaliation from their employer.

297.    Plaintiff's complaints regarding unlawful sex discrimination, pregnancy discrimination, and denial of FMLA rights, directed to union representatives, administration, the EEOC, and the PHRC, touched on matters of public concern, including compliance with federal anti-discrimination law by a public school district and the equitable treatment of female educators.

298.    Defendants Kelly, Albarran, and Kozik, acting under color of state law, retaliated against Plaintiff for engaging in constitutionally protected speech and petitioning activity by:

   a.   Maintaining and escalating the punitive scheduling imposed upon Plaintiff following her complaints;

   b.   Subjecting Plaintiff to a hostile interrogation in connection with a parent complaint following the filing of her EEOC charge;

   c.   Refusing to respond to Plaintiff's legitimate employment inquiries expressly citing the pendency of the EEOC proceedings as justification;

   d.   Failing to investigate Plaintiff's formal complaints while claiming to have concluded investigations before receiving Plaintiff's formal paperwork or speaking to Plaintiff or her witnesses; and

e.  Again denying Plaintiff the Choral Director position in June 2025 after requiring her to interview under inequitable conditions.

299.  Plaintiff's interest in speaking out on matters of public concern outweighs any legitimate interest of Defendant Neshaminy School District in the efficient operation of its workplace, particularly where Defendants have failed to articulate any legitimate reason for the retaliatory treatment.

300.  Because the actions of Defendants Kelly, Albarran, and Kozik were malicious, wanton, or recklessly indifferent to Plaintiff's constitutionally protected rights, Plaintiff is entitled to punitive damages against each individual Defendant.

301.  As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

## **INJURY AND DAMAGES**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## **JURY DEMAND**

Plaintiff Hillary Rhydderch requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hillary Rhydderch demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees and costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: <u>March 17, 2026</u>

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*
Caroline H. Miller, Esquire
Derek Smith Law Group, PLLC
1628 Pine Street,
Philadelphia, Pennsylvania 19103
Tel: (786) 292-7605
Fax: (305) 503-6741
E-Mail: caroline@dereksmithlaw.com